FILED
2024 Feb-12 PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **RAJIV MATTHEW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No.:** |
| | ) | **5:23-cv-00614-LCB** |
| | ) | |
| **SPARKS ENERGY, INC.,** | ) | |
| | ) | **JURY DEMANDED** |
| **Defendant.** | ) | |

# AMENDED COMPLAINT

**COMES NOW** Plaintiff, Mr. Rajiv Matthew ("Plaintiff" or "Matthew"), by and through his undersigned counsel of record, and files this Amended Complaint against Sparks Energy, Inc. ("Defendant" or "Sparks"). As grounds for this Amended Complaint, Plaintiff states the following:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court as the amount in controversy exceeds this Court's jurisdictional minimum of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and is between citizens of different states, pursuant to 28 U.S.C. § 1332(a)(1).

2. Further, this is a suit authorized and brought to secure the protection of and to redress the deprivation of rights secured by the Americans with Disabilities

Act of 1990, as amended, codified at 42 U.S.C. §12101 et seq. ("the ADA") and the Age Discrimination in Employment Act of 1967, as amended, codified at 29 U.S.C. §623 et seq. ("ADEA").

3. The unlawful actions described herein were executed and committed at Defendant's principal place of business in Danville, Alabama. Danville, Alabama is located in Morgan County, Alabama.

4. Defendant is a Delaware corporation. Defendant conducts business in the State of Alabama. Defendant has entered and executed contracts with its employees, specifically Plaintiff, in the State of Alabama, and all actions giving rise to Plaintiff's claims took place in the State of Alabama. Therefore, venue lies within the U.S. District Court for the Northern District of Alabama, Northeastern Division pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff is a citizen of the United States of America, domiciled in the State of Nevada, and over the age of nineteen (19) years.

6. Defendant is a Foreign Corporation incorporated under the laws of the State of Delaware but functioning and doing business within the State of Alabama, with its principal place of business located at 1370 Kirby Bridge Road Danville, Alabama 35619.

7. During all times relevant to this Amended Complaint, Defendant conducted business in Alabama, specifically at 1370 Kirby Bridge Road Danville, Alabama 35619.

## ADMINISTRATIVE EXHAUSTION

8. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the EEOC received it on May 10, 2023. Charge No. 420-2023-02877 ("the Charge") alleged that Plaintiff was subjected to discrimination based on his disability, in violation of the ADA, and also subjected to discrimination based on his age, in violation of the ADEA. (See Exhibit A).

9. The EEOC issued a Dismissal and Notice of Rights (the "RTS") for the Charge on January 11, 2024 (See Exhibit B).

10. This Amended Complaint is filed within ninety (90) days of Plaintiff's receipt of the RTS.

11. Plaintiff has thus exhausted all administrative remedies available prior to filing this Amended Complaint.

## FACTS

12. In or around December 2022, Plaintiff and Defendant negotiated and discussed each term and condition of a potential employment contract.

13. After arm's length negotiations between the parties, Defendant memorialized the terms and conditions agreed upon between the parties into a written employment agreement (hereinafter referred to as "the Agreement") (A copy of the Agreement is attached hereto as **Exhibit C** and incorporated by reference to it.).

14. Plaintiff entered into and executed the Agreement with Defendant on December 27, 2022.

15. The Agreement stated that Plaintiff would be Defendant's Controller and Interim Chief Accounting Officer ("CAO").

16. The Agreement stated that Plaintiff's start date was December 27, 2022.

17. Defendant's Owner and President, Ottis J. Sparks ("O. Sparks"), executed the Agreement on December 27, 2022.

18. The Agreement further provided the following terms regarding Plaintiff's compensation under the Agreement: "Your starting base rate will be $200,000 annually, payable in accordance with the company's standard payroll schedule, which occurs on a weekly basis. Your wages will be subject to adjustment

pursuant to the company's employee compensation policies. Also, you will receive a $30,000 discretionary bonus as well as .25% equity."

19. Further, the Agreement stated, "This is the full and complete agreement between you and the Company on this term."

20. Plaintiff accepted these compensation terms and relied on the Agreement.

21. Plaintiff, in full reliance on the terms and conditions in the Agreement quit his well-paying job in Nevada, made numerous arrangements to come to Alabama, and began working for Defendant on December 27, 2022.

22. On January 3, 2023, Sparks' Chief Financial Officer, Omar Hussein ("Hussein"), met Plaintiff for the first time in person.

23. During Plaintiff and Hussein's first meeting, Hussein seemed taken aback by Plaintiff's appearance, as if Plaintiff was much older than Hussein expected.

24. Also on January 3, 2023, Plaintiff explicitly notified Hussein of his disabilities, which include diabetes and hypertension.

25. Hussein and other employees were immediately impressed with Plaintiff and his work product; so much so that Plaintiff received compliments regarding Plaintiff's effective communication style, both verbally and virtually.

26. On or around January 10, 2023, while working, Plaintiff notified Hussein about transactions that he believed the company would need to disclose based on the requirements set forth by the United States Securities and Exchange Commission ("SEC").

27. Hussein responded to Plaintiff's opinions regarding these disclosure requirements, appearing to be frustrated by Plaintiff's observations regarding the company's need for disclosures, stating that O. Sparks and Hussein are the final decision-makers and do not wish to disclose certain required information.

28. Plaintiff responded by informing Hussein that the disclosures were mandatory, and that Plaintiff could not risk his accounting license by signing off on a document that was not completely accurate and transparent.

29. The next day, on or about January 12, 2023, Hussein told Plaintiff that he needed to talk to Plaintiff. Shockingly, during this meeting, Hussein terminated Plaintiff's employment.

30. While terminating Plaintiff's employment, Hussein explained that Defendant needed someone younger and more fit to be in the office. Plaintiff countered and rebuffed Hussein's concerns, assuring Hussein that he was fully experienced, capable, and willing to work long hours to complete the job.

31. Hussein responded by explaining that Plaintiff was too old, sick, and too set in his ways to be the right fit for the new team Defendant desired.

32. Upon Plaintiff's termination from Defendant, Defendant failed to compensate Plaintiff per the Agreement.

33. Plaintiff was sixty-three (63) years old at the time Defendant terminated his employment.

34. Specifically, Defendant failed to pay Plaintiff the $30,000.00 bonus.

35. Defendant also failed to compensate Plaintiff for his .25% equity in Sparks.

36. Defendant's failure to compensate Plaintiff is in breach of the Agreement.

## COUNT I
## BREACH OF CONTRACT

37. In or around December 2022, Plaintiff and Defendant negotiated and discussed each term and condition of a potential employment contract.

38. After arm's length negotiations between the parties, Defendant memorialized the terms and conditions agreed upon between the parties into the Agreement.

39. Plaintiff entered into and executed the Agreement with Defendant on December 27, 2022.

40. Defendant's Owner and President, O. Sparks executed the Agreement on December 27, 2022.

41. The Agreement provided the following terms regarding Plaintiff's compensation under the Agreement: "Your starting base rate will be $200,000 annually, payable in accordance with the company's standard payroll schedule, which occurs on a weekly basis. Your wages will be subject to adjustment pursuant to the company's employee compensation policies. Also, you will receive a $30,000 discretionary bonus as well as .25% equity."

42. Further, the Agreement stated, "This is the full and complete agreement between you and the Company on this term."

43. Plaintiff accepted these compensation terms and relied on the Agreement.

44. Plaintiff, in full reliance on the terms and conditions in the Agreement quit his well-paying job in Nevada, made numerous arrangements to come to Alabama, and began working for Defendant on December 27, 2022.

45. Plaintiff worked for Defendant until he was terminated; thus, Plaintiff upheld his part of the Agreement.

46. Defendant terminated Plaintiff on or about January 12, 2023.

47. Upon Plaintiff's termination from Defendant, Defendant failed to compensate Plaintiff per the Agreement.

48. Specifically, Defendant failed to pay Plaintiff the $30,000 bonus.

49. Defendant also failed to compensate Plaintiff for his .25% equity in Defendant.

50. Defendant's failure to compensate Plaintiff is in breach of the Agreement.

51. Plaintiff has been injured and damaged based on the breach of the Agreement.

## COUNT II
## FRAUDULENT INDUCEMENT

52. In or around December 2022, Plaintiff and Defendant negotiated and discussed each term and condition of a potential employment contract.

53. After arm's length negotiations between the parties, Defendant memorialized the terms and conditions agreed upon between the parties into the Agreement.

54. Plaintiff entered into and executed the Agreement with Defendant on December 27, 2022.

55. Defendant's Owner and President, O. Sparks executed the Agreement on December 27, 2022.

56. The Agreement provided the following terms regarding Plaintiff's compensation under the Agreement: "Your starting base rate will be $200,000 annually, payable in accordance with the company's standard payroll schedule,

which occurs on a weekly basis. Your wages will be subject to adjustment pursuant to the company's employee compensation policies. Also, you will receive a $30,000 discretionary bonus as well as .25% equity."

57. Further, the Agreement stated, "This is the full and complete agreement between you and the Company on this term."

58. Plaintiff accepted these compensation terms and relied on the Agreement.

59. Plaintiff, in full reliance on the terms and conditions in the Agreement quit his well-paying job in Nevada, made numerous arrangements to come to Alabama, and began working for Defendant on December 27, 2022.

60. Defendant, however, terminated Plaintiff on or about January 12, 2023.

61. Upon Plaintiff's termination from Defendant, Defendant failed to compensate Plaintiff per the Agreement.

62. Defendant had a duty to be truthful in each and every representation memorialized within the Agreement.

63. Defendant, however, made false representations of material fact by memorializing Plaintiff receiving .25% equity in Defendant in the Agreement and a $30,000 discretionary bonus.

64. These false representations were made knowingly with intent to deceive Plaintiff and to fraudulently induce Plaintiff to accept the position being

offered by Defendant, leave his current job, move from his current residence in Nevada, and begin working for Defendant to assist it in the process of transitioning from private ownership to public ownership through a public stock offering.

65. Plaintiff justifiably relied upon these false representations.

66. As a proximate result of Defendant's knowing and intentional false representations, Plaintiff was fraudulently induced to take all of the above actions in reliance on the misrepresentations and suffered loss, harm, and damages.

## COUNT III
## DISABILITY DISCRIMINATION UNDER THE ADA

67. Plaintiff suffers from diabetes and hypertension ("health conditions")

68. Plaintiff's health conditions are qualifying disabilities under the ADA.

69. Plaintiff was and is qualified to perform the essential job duties of his position at Sparks Energy, Inc.

70. Defendant hired Plaintiff on December 27, 2022 to work as Controller and Interim Chief Accounting Officer.

71. On January 3, 2023, Plaintiff notified Defendant's Chief Financial Officer Omar Hussein ("Hussein") of his health conditions.

72. On or about January 12, 2023, Hussein terminated Plaintiff's employment.

73. While terminating Plaintiff's employment, Hussein told Plaintiff that Defendant needed someone younger and more fit for the Controller and Interim Chief Accounting Officer role.

74. Plaintiff assured Hussein that he was fully experienced, capable, and willing to work long hours to complete the job.

75. Hussein responded that Plaintiff was too old, sick and set in his ways to be the right fit for the position.

76. Defendant's actions in terminating Plaintiff's employment resulted in financial and emotional harm to Plaintiff.

## COUNT IV
## AGE DISCRIMINATION UNDER THE ADEA

77. Defendant hired Plaintiff on December 27, 2022 to work as Controller and Interim Chief Accounting Officer.

78. On January 3, Sparks' Chief Financial Officer, Omar Hussein ("Hussein") met Plaintiff for the first time in person.

79. During Plaintiff and Hussein's first meeting, Hussein seemed taken aback by Plaintiff's appearance, as if Plaintiff was much older than Hussein expected.

80. On or about January 12, 2023, Hussein terminated Plaintiff's employment.

81. While terminating Plaintiff's employment, Hussein told Plaintiff that Defendant needed someone younger and more fit for the Controller and Interim Chief Accounting Officer role.

82. Plaintiff assured Hussein that he was fully experienced, capable, and willing to work long hours to complete the job.

83. Hussein responded that Plaintiff was too old, sick and set in his ways to be the right fit for the position.

84. Plaintiff was sixty-three (63) years old at the time Defendant terminated his employment.

85. Defendant's actions in terminating Plaintiff's employment resulted in financial and emotional harm to Plaintiff.

**WHEREFORE,** Plaintiff respectfully requests this Court grant to Plaintiff the following:

A. An Order for specific performance requiring Defendant to appropriately compensate Plaintiff per the Agreement;

B. Compensatory Damages;

C. Punitive damages;

D. A reasonable attorneys' fee;

E. Plaintiff's costs and expenses;

F. Interest on all monies owed; and

G. Any and all other relief the Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted on this the 12th day of February 2024.

s/ *Mitchell G. Allen*
Mitchell G. Allen (ASB-6947-A54M)
*Attorney for Plaintiff*

**Michel | King**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Telephone: (205) 980-5700
Facsimile: (205) 994-2819
mitch@wmalabamalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of February 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

Melisa C. Zwilling
CARR ALLISON
100 Vestavia Parkway
Birmingham, Alabama 35216
Telephone (205) 822-2006
Facsimile: (205) 822-2057
Email: mzwilling@carrallison.com

*s/ Mitchell G. Allen*
Mitchell G. Allen